UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NICHOLAS C.,<br><br>                    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Case No. 24-cv-10284<br><br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 11, 13)**

## I.    Introduction

Plaintiff Nicholas C. appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied his application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions and consented to the undersigned conducting all proceedings under 28 U.S.C. § 636(c). ECF No. 10; ECF No. 11; ECF No. 13. After review of the record, the Court **ORDERS** that:

- Plaintiff's motion (ECF No. 11) is **DENIED**;
- the Commissioner's motion (ECF No. 13) is **GRANTED**; and

- the ALJ's decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## II.    Background

### A.  Plaintiff's Background and Disability Application

Born in May 1979, plaintiff was 43 years old when he applied for DIB in September 2022, with an alleged disability onset date of September 15, 2021.  ECF No. 6-1, PageID.35, 40.  He had past relevant work as a diesel mechanic and forklift mechanic.  *Id.*, PageID.40.  Plaintiff claimed disability from psychosis, depression, low back issues, and obesity.  *Id.*, PageID.86.

After a hearing, during which plaintiff and a vocational expert (VE) testified, the ALJ found plaintiff not disabled.  *Id.*, PageID.35, 41.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id.*, PageID.21.  Plaintiff timely filed for judicial review.  ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

3

Applying this framework, the ALJ concluded that plaintiff was not disabled. At the first step, he found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 15, 2021. ECF No. 6-1, PageID.37. At the second step, he found that plaintiff had the severe impairments of psychosis, depression, degenerative disc disease of the lumbar spine, and obesity. *Id.* Next, the ALJ concluded that none of plaintiff's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*, PageID.37-38.

Between the third and fourth steps, the ALJ found that plaintiff had the RFC to perform a reduced range of light work[2]:

> except not climb ladders, ropes, or scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; avoid exposure to unprotected heights; perform simple, routine, and repetitive tasks in an environment isolated from the public with occasional coworker and supervisor interaction.

*Id.*, PageID.38. At step four, the ALJ found that plaintiff could not perform his past relevant work. *Id.* at PageID.40. After considering plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined at the final step that there were jobs in significant numbers that

---

[2] Light work involves occasionally lifting or carrying 20 pounds at a time, frequently lifting or carrying ten pounds at a time, and standing or walking for six hours out of an eight-hour workday. 20 C.F.R. § 404.1567(b); Social Security Regulation 83-10.

plaintiff could perform, including positions as a scrap sorter, folder, and inspector. *Id.* at PageID.41.

III. Analysis

A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence[3] and conformed with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up). The substantial-evidence standard does not permit the Court to independently weigh the evidence. *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because

---

[3] Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

5

substantial evidence exists in the record to support a different conclusion."); see also Cutlip v. Sec'y of Health & Hum. Servs., 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Plaintiff challenges the RFC, arguing that the ALJ failed to assess the limiting effects of his physical and mental impairments and disregarded his subjective symptoms. ECF No. 11, PageID.754-761. Plaintiff also argues that the ALJ overlooked whether he was eligible for a closed period of benefits. *Id.*, PageID.761. The Court disagrees and affirms the ALJ's decision.

**B.**

Plaintiff contends that the RFC does not include all the physical limitations supported by the record. *Id.*, PageID.754-761. He cites imaging showing degenerative changes in his spine, as well as other medical records of his obesity, low back pain, and resulting functional limitations. *Id.* (citing ECF No. 6-1, PageID.295, 297, 301-302, 306, 312, 358, 468-469, 490-491, 514, 520, 540, 618, 627). Plaintiff also argues that the ALJ did not adequately consider his subjective symptoms, citing his hearing

6

testimony and functional reports that he could not bend or lift, needed to rest during the day, and could stand for less than ten minutes. *Id.* (citing ECF No. 6-1, PageID.67-70, 211-217, 540).

The regulations set forth a two-step process for evaluating a plaintiff's subjective symptoms. First, the ALJ evaluates whether objective medical evidence of an underlying condition exists and whether that condition could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(a); Social Security Ruling (SSR) 16-3p. If so, the ALJ assesses any work-related limitations by determining the intensity, persistence, and limiting effects of these symptoms. 20 C.F.R. § 404.1529(a); SSR 16-3p. In sum, ALJs assess whether the symptoms claimed are "consistent with the objective medical and other evidence in the individual's record." SSR 16-3p.

To evaluate the limiting effects of subjective symptoms, ALJs consider all available evidence, including the plaintiff's history, laboratory findings, statements by the plaintiff, and medical opinions. 20 C.F.R. § 404.1529(a). Although a plaintiff's description of his symptoms will "not alone establish that [he] is disabled," *id.*, the ALJ may not disregard the plaintiff's subjective complaints because they lack substantiating objective evidence, SSR 16-3p. Along with objective evidence, ALJs must consider

7

a plaintiff's daily activities; the location, duration, frequency, and intensity of pain; precipitating and aggravating factors; the type, dosage, and side effects of medication to alleviate symptoms; and any other treatment or measures used to relieve pain. 20 C.F.R. § 404.1529(c)(3).

The ALJ accurately summarized plaintiff's subjective reports that he had back pain affecting his ability to climb stairs, lift, and do postural activities. ECF No. 6-1, PageID.39. But the ALJ concluded that the alleged "intensity, persistence and limiting effects are not entirely consistent with the evidence." *Id.* He acknowledged plaintiff's treatment for back pain beginning in July 2022 and that he was found to be "intolerant to trunk mobility" in February 2023.[4] *Id.*, PageID.39. But the ALJ also observed that imaging showed minimal degenerative changes and that plaintiff's doctors recommended only conservative treatment. *Id.* Although the ALJ recognized that plaintiff had limited range of motion, he noted that plaintiff's back pain had improved since losing over 30 pounds. *Id.*, PageID.39-40. And the ALJ noted that the plaintiff could shop, drive, and visit his children

---

[4] The relevant period in this case spans from the alleged onset date of September 15, 2021, to plaintiff's date last insured of December 31, 2022. *See Watters v. Comm'r of Soc. Sec. Admin.*, 530 F. App'x 419, 421 (6th Cir. 2013) ("For purposes of determining Watters's eligibility for [DIB], the relevant time period runs from his alleged onset date to his date last insured." (cleaned up)).

who lived out of town and that he recently travelled to the Philippines.  *Id.*, PageID.40.  Substantial evidence supports his reasoning.

During a January 2022 visit with his primary care provider, Liz E. Alvarado, FNP-BC, plaintiff's physical examination was normal, and Alvarado determined that his chronic pain syndrome was stable.  *Id.*, PageID.370-372.  Plaintiff consulted a kinesiotherapist in March 2022 about losing weight, which had ranged from 363 to 386 pounds with a BMI exceeding 50.  *Id.*, PageID.358, 360.  Plaintiff had no back pain at his visits with Alvarado in March, May, or early July 2022, and physical examination findings remained normal.  *Id.*, PageID.311-313, 331-333, 346-347.

Plaintiff complained of back pain for the first time in late July 2022.  *Id.*, PageID.302-303.  He reported that the pain had worsened over the previous week and that it radiated into his right leg.  *Id.*, PageID.302.  Plaintiff had an antalgic gait and severe pain with palpation over the lumbar and gluteal areas, worse on the right.  *Id.*, PageID.303.  Alvarado ordered imaging and prescribed a steroid, muscle relaxer, Tylenol, and lidocaine patches.  *Id.*  In August 2022, plaintiff continued to complain of severe pain that left him unable to stand for longer than ten minutes.  *Id.*, PageID.296-297.  But he declined nurses' recommendations to go to the emergency

9

room and later reported that medication patches, muscle relaxants, and rest were making the pain manageable.  *Id.*

An August 2022 x-ray showed no significant abnormality in the lumbar spine.  *Id.*, PageID.301.  An MRI showed mild L5-S1 intravertebral disc height narrowing and facet arthrosis, with mild foraminal narrowing worse on the right than on the left.  *Id.*, PageID.490-491.  Alvarado referred plaintiff to neurosurgeon Emily Levin, D.O., because his pain was worsening.  *Id.*, PageID.295.  Plaintiff told Dr. Levin in September 2022 that his back pain radiated into his right leg and that muscle relaxers did not help.  *Id.*, PageID.520.  After reviewing the MRI, Dr. Levin advised against surgery and recommended conservative treatment like physical therapy, rehab, aqua therapy, massage therapy, acupuncture, chiropractic care, and weight loss.  *Id.*  If those measures failed, Dr. Levin recommended steroid injections.  *Id.*

Plaintiff was next seen in Alvarado's office in December 2022, and he reported that he was "doing well overall."  *Id.*, PageID.628.  He requested renewal of his prescription for a muscle relaxer and had scheduled his first appointment with physical therapy—plaintiff stated that he was satisfied with this plan.  *Id.*, PageID.629.  Physical examination findings were normal, except for mild edema in both feet.  *Id.*, PageID.630.

At his first physical therapy appointment in January 2023, plaintiff reported that he could not bend or lift, that he could walk less than a quarter of a mile, that he could stand for less than ten minutes, and that his pain ranged in severity from a two to a six out of ten. *Id.*, PageID.540. The therapist noted that plaintiff had a lateral weight shifting gait, could not bend forward or backward, and could only reach to his mid-thigh with right- and left-side bending. *Id.*, PageID.541. He was intolerant to trunk mobility, and bending and lifting could trigger severe back pain. *Id.* But the therapist stated that plaintiff "should do well restoring strength and mobility with completion of his [plan of care]." *Id.* Within two weeks, plaintiff was doing well with progressions and reported moderate fatigue with no increase in pain. *Id.*, PageID.554. By June 2023, plaintiff's physical examination was normal, and his low back pain was resolved. *Id.*, PageID.718-719.

This evidence supports the ALJ's reasoning that imaging studies showed minimal degenerative changes; that plaintiff received only conservative treatment; and that plaintiff's back pain was resolved by June 2023, less than a year after it started in July 2022. Plaintiff's reliance on other records documenting his low back pain is unavailing, as the Court may not reweigh the evidence or substitute its own judgment for that of the ALJ. *See Hatmaker*, 965 F. Supp. 2d at 930.

The RFC is also supported by the medical opinion of state-agency physician Deborah Mulligan, D.O., who found that plaintiff could perform light work, with frequent postural activities and occasional climbing of ladders, ropes, and scaffolds.  ECF No. 6-1, PageID.98.  The ALJ found Dr. Mulligan's opinion partly persuasive but concluded that the records supported more limited postural restrictions.  *Id.*, PageID.39.  A plaintiff faces an uphill battle when, as here, the ALJ found him more restricted than the state agency consultant.  *See McCoy v. Kijakazi*, No. 21-11739, 2023 WL 3407159, at *7 (E.D. Mich. Feb. 27, 2023), *adopted*, 2023 WL 3147899 (E.D. Mich. Apr. 28, 2023) ("An ALJ's more restrictive finding than that of the state agency physician's may lend support for the ALJ's finding." (cleaned up)); *Brooks v. Comm'r of Soc. Sec.*, No. 20-13246, 2022 WL 2163018, at *3 (E.D. Mich. May 23, 2022), *adopted*, 2022 WL 2161485 (E.D. Mich. June 15, 2022) ("Courts in this circuit have routinely found RFC assessments that are more restrictive than the opinion evidence to be supported by substantial evidence.").  For this reason and those discussed above, the ALJ's rationale for the RFC is supported by substantial evidence.

Plaintiff contends that the ALJ failed to address his medications' side effects, including drowsiness.  ECF No. 11, PageID.757, 760; ECF No. 14,

PageID.792. ALJs must consider the side effects of a claimant's medications. 20 C.F.R. § 404.1529(c)(3). Although the ALJ did not discuss side effects in the decision, he asked plaintiff about side effects during the hearing. ECF No. 6-1, PageID.71, 83. Plaintiff cites no medical records showing that his medications caused significant side effects. "Where, as here, a claimant testifies that [he] experiences medication side effects, but the medical records make no indication that [he] reported medication side effects to [his] physicians, an ALJ does not err in finding that the claimant suffered no adverse side effects from [his] medications." *Nyhus-Dell v. Comm'r of Soc. Sec.*, No. 18-CV-10132, 2019 WL 2051895, at *4 (E.D. Mich. Feb. 5, 2019), *adopted*, 2019 WL 1349617 (E.D. Mich. Mar. 26, 2019); *see also Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665-66 (6th Cir. 2004).

## C.

Plaintiff's arguments about his mental impairments mirror those about his physical impairments. He contends that the RFC does not include all mental limitations supported by the record, citing treatment records documenting his complaints about stress and depression. ECF No. 11, PageID.758 (citing ECF No. 6-1, PageID.321, 345, 357, 364, 368, 382, 518-519, 637-638, 699). Plaintiff also contends that the ALJ disregarded

13

his subjective complaints that his mental impairments prevent him from interacting with others and managing stress, and that he tries to avoid people. *Id.*, (citing ECF No. 6-1, PageID.54-58, 64, 76-79).

The ALJ noted that plaintiff reported having a mental breakdown that led to his discharge from the military and an "intolerance to stress affecting his ability to remember, complete tasks, and get along." ECF No. 6-1, PageID.39-40. The ALJ concluded that the reported symptoms conflicted with the other evidence. *Id.* He discussed that plaintiff's mental status examinations were often normal; that providers noted that plaintiff was stable on medications; and that plaintiff admitted that his medications were effective. *Id.* The ALJ also reasoned that plaintiff "does well when taking his medications" and "had no inpatient stays or suicidal/homicidal ideation." *Id.*, PageID.40. Again, substantial evidence supports this reasoning.

In treatment records from December 2021 through March 2023, providers repeatedly described plaintiff as stable on antipsychotic and depression medications.[5] *Id.*, PageID.294, 321-322, 328, 339, 345, 351-

---

[5] Plaintiff contends that an impairment described as stable can still be disabling. ECF No. 14, PageID.792 (citing *Reed v. Sec'y of Health & Human Servs.*, 804 F. Supp. 914, 921 (E.D. Mich. 1992). "Stable" in medical parlance can mean "that a patient's condition has neither worsened nor improved; it does not mean that a patient is free of symptoms." *Woznicki v. Comm'r of Soc. Sec.*, No. 20-11816, 2021 WL

14

352, 356-357, 362-364, 367-368, 379, 382-383, 511, 518-519, 627, 637-638, 699-700. Providers observed that plaintiff's speech was normal and that he was alert and oriented with a euthymic mood, congruent with his affect, and that his thought process was intact. *Id.*, PageID.294, 321-322, 328, 339, 351-352, 356-357, 362-364, 367-368, 379, 511, 627. Another provider stated that plaintiff was pleasant, cooperative, and able to engage without irritability, agitation, or aggression and had normal thought content and process, good mood, blunted affect, fair insight and judgment, and intact cognition for attention/concentration and recall. *Id.*, PageID.518-519, 637-638, 699-700. Plaintiff denied hallucinations or delusions. *Id.*, PageID.518-519, 637-638, 699-700.

In early 2022, plaintiff reported increased stress and depression, so his psychiatrist prescribed Wellbutrin. *Id.*, PageID.356-357, 364. In April 2022, plaintiff's depression and anxiety remained elevated, and he stated that he felt overwhelmed and angry. *Id.*, PageID.339, 345. Yet plaintiff also stated that the medication was helping him feel better throughout the

---

4167212, at *1 (E.D. Mich. Sept. 14, 2021). But given that his mental status examinations were consistently normal, plaintiff has not met his burden of showing that the providers' descriptions of his condition as "stable" should be understood to mean "disabling." *See Dobbs v. Comm'r of Soc. Sec.*, No. 1:18-CV-11903, 2019 WL 4196505, at *8 (E.D. Mich. Aug. 19, 2019), *adopted*, 2019 WL 4189485 (E.D. Mich. Sept. 4, 2019).

day. *Id.* By May and June 2022, plaintiff reported an improved mood, and he rated his depression at a two or three out of ten. *Id.*, PageID.321-322, 328. In October 2022, plaintiff denied having any depressive episodes and stated that his overall moods had improved. *Id.*, PageID.511, 518-519. He admitted to being inconsistent with taking his medications; he sometimes took it only when he noticed a decrease in his mood, which would then resolve within 15 minutes. *Id.*, PageID.518-519. Although plaintiff had some internal monologue and limited judgment about his adherence to treatment, his mental status was otherwise normal. *Id.*

Plaintiff reported a low mood in late November 2022 but admitted that he had not been taking his depression medication, which managed his symptoms well when he took it consistently. *Id.*, PageID.637-638. He stated that he would work on being more consistent in taking his medication. *Id.* Plaintiff reported no new problems or concerns in December 2022 and stated in March 2023 that his mood had been surprisingly good. *Id.*, PageID.627-628, 699-700.

These records align with the ALJ's conclusion that plaintiff's mental impairments were stable and effectively managed with medication. By citing evidence of increased symptoms of depression, plaintiff again asks

16

the Court to impermissibly reweigh the evidence. *See Hatmaker*, 965 F. Supp. 2d at 930.

The mental RFC is also supported by the medical opinion of state-agency reviewer George Starrett, Ed.D., LP, who stated that plaintiff's episodic mood instability could cause moderate limitations in concentration, persistence, and pace but would not preclude him from performing simple, routine tasks. ECF No. 6-1, PageID.99-100. The ALJ found this opinion partly persuasive but included greater social limitations in the RFC. *Id.*, PageID.40. As discussed, RFCs that are more restrictive than the opinion evidence are routinely upheld. *See McCoy*, 2023 WL 3407159, at *7; *Brooks*, 2022 WL 2163018, at *3. Thus, the mental RFC is supported by substantial evidence.

Plaintiff argues that the ALJ disregarded his testimony that he takes measures to avoid having psychotic episodes. ECF No. 11, PageID.758, 760. For example, he lives alone in a camper on family property and spends only two hours a day with his family. *Id.* (citing ECF No. 6-1, PageID.53-54, 77-78). Plaintiff also stated that he shops at irregular hours to avoid others. *Id.* (citing ECF No. 6-1, PageID.76-77).

Although the ALJ did not specifically reference this testimony, he was not required to discuss every piece of evidence in the record. *See*

17

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("It is well settled that an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (cleaned up)). The ALJ recognized that plaintiff reported having trouble getting along with others but observed that plaintiff went to stores and restaurants, used social media, visited his children, and went on a vacation to the Philippines. ECF No. 6-1, PageID.38-39, 40 (citing ECF No. 6-1, PageID.54, 74, 77, 211-214); *see also* ECF No. 6-1, PageID.294, 321, 382-383 (noting that plaintiff had some custody over his children and did not like dropping them off at their mother's house). Plaintiff testified that he could tolerate his immediate family, played cornhole with his children during his niece's graduation party, and only left the party when he noticed that 250 people had joined. *Id.*, PageID.77. The ALJ also noted that plaintiff was consistently described as pleasant and cooperative during his appointments. *See, e.g.*, *id.*, PageID.39, 308, 360, 416, 446, 519, 638, 699, 731. This evidence supports the ALJ's conclusion that plaintiff's statements about his social limitations conflicted with other records.

## D.

Last, plaintiff makes a cursory argument that the ALJ overlooked whether he was eligible for a closed period of benefits. ECF No. 11,

PageID.761. Plaintiff maintains that his medical conditions improved after his date last insured but that he was disabled during the relevant period. *Id.*

To sustain his argument, plaintiff must show that he could not work for a continuous 12-month period. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). The ALJ found that plaintiff was not disabled "*at any time* from September 15, 2021, the [alleged onset date], through December 31, 2022, the [date last insured]." ECF No. 6-1, PageID.41 (emphasis added). The ALJ reasoned that the medical records consistently documented mild or unremarkable findings requiring only conservative treatment during the relevant period—a rationale supported by the record. True, plaintiff's back pain began in late July 2022 and resolved in June 2023, after the date last insured. But plaintiff has not shown that it precluded him from working for 12 months during the relevant period. Nor does plaintiff rely on a medical opinion stating that he was disabled for a closed period. Instead, he invites the Court to impermissibly reweigh the evidence to determine whether he should have been found disabled for a closed period. *See Hatmaker*, 965 F. Supp. 2d at 930.

## IV. Conclusion

The Court **DENIES** plaintiff's motion for summary judgment (ECF No. 11), **GRANTS** the Commissioner's motion for summary judgment (ECF No. 13), and **AFFIRMS** the ALJ's decision under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford  
ELIZABETH A. STAFFORD  
United States Magistrate Judge

Dated: February 13, 2025

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 13, 2025.

s/Davon Allen  
DAVON ALLEN  
Case Manager